May it please the Court, Maria Genesee, for the petitioner. I would like to reserve two minutes for rebuttal. Since the filing of my reply brief, the Court decided for Domopatia, wording that the filing of a naturalization application does not change an applicant's immigration status from that of an alien to that of a national. That case was decided based on its narrow facts involving the filing of a naturalization application alone. But, counsel, isn't the reasoning of that case applicable here, too, in that under the INA, the only way a person can become a national, that case reasoned, was either through birth in particular territories or through a completed naturalization? If we apply that reasoning, doesn't that suggest that your client cannot succeed? Well, I think that the Court's analysis and the Pro Domopatia overlooked some of the provisions of the Immigration and Nationality Act. More specifically, the Court heavily relied on Section 1101A23, assuming that the definition of naturalization signified acquisition of nationality after birth through full naturalization alone and equated national with naturalized alien, naturalized citizen. However, there are multiple methods and types of naturalization in the INA, including posthumous naturalization of aliens who died while serving in the U.S. armed forces. Further, Section 1421B specifically limits the naturalization process to the manner and conditions prescribed by Title III. But Section 1408, which deals with nationality, does not expressly limit acquisition of U.S. nationality to birth in the outlying possessions. If Congress wanted to limit nationality that way, it would have said so in the INA. So your argument is, it sounds like, in part, that that case was wrongly decided. And what can another three-judge panel do about that, if it were? Is there anything that a three-judge panel can do to remedy what you perceive as an incorrect decision? I mean, the Court could limit the decision in Pro Domopatia to its facts. The facts were really narrow. It only involved the application for naturalization. Here, there is much more involved. The Petitioner took affirmative actions to – affirmative steps to prove his permanent allegiance to the United States. He filed a declaration of intention to naturalize. He served in the U.S. Army. Well, the real – the only – excuse me. I'm sorry, I didn't mean to interrupt you. The only significant difference, it seems to me, is the service in the Army. And that is certainly a very different fact. But under the terms of the statute, why does that have a different result than the application to become naturalized in any other context? The fact that he served in the U.S. Army? Right. How does that make him a national under the statute? Well, my argument is that the national – I mean, the statute does not just say nationality is acquired by birth in the outlying possessions. That's why we have that catch-all definition in Section 1101A.22, which specifically defines national by permanent allegiance. And so the fact that he served in the U.S. Army in a time of conflict and took the oath of allegiance, I mean, that under the totality of circumstances analysis clearly indicates that he qualified as a national in Section – a person to Section 1101A.22. But this Court can't confer citizenship upon anyone. I'm sorry? This Court can't confer citizenship upon anybody, just the same as taking that oath for the Army, unless he follows through and takes the oath to become a citizen. He's not a citizen. And the only group that can confer citizenship upon you is the Congress. The courts don't have that power, nor the executive branch. So even if we wanted to help you, we couldn't do it under these circumstances. Unless you tell us how to do it. But, I mean, the fact that the statute is ambiguous and under the rule of lenity, the Court can – I mean, there are rules of statutory construction pursuant to which, you know, none of the sections of a statute should be interpreted to make them superfluous. And if there's a definition, you know, of permanent – national based on permanent allegiance in the statute, the Court should not overlook that. And there are numerous ambiguities in the statute. I mean, for example, in Section 1436, when providing for the naturalization of non-citizen nationals, Congress referred to a person not a citizen who owes permanent allegiance to the United States, rather than persons born in outlying possessions. There are other indications in the statute besides the definitional section that Congress intended the national to be defined beyond birth by – birth in the outlying possessions, also by other methods. And, you know, it's not an – Section 1408 is not an exclusive provision for acquisition of nationality. The statute does not say so. And I understand that Pordomo Padilla is not a good case for us, but it really involved narrow facts, you know, just the application for naturalization. And also in Pordomo Padilla, the Court did not take into consideration international law, which does determine nationality by examining family ties, attachments, and participation in public life. And there's a U.S. court case that held that a court must construe the law of nationality consistent with international law. That's the charming Betsy 6 U.S. 64, 1805.  He did, Your Honor, but the definition of nationality in 110120 – 1101822 does not talk about good moral character as a prerequisite to showing of a nationality. If you'd like to reserve some time for rebuttal, you have about two minutes remaining. Okay, Your Honor. Thanks. Thank you. Mr. Molina. May it please the Court. My name is Ernesto Molina with the U.S. Department of Justice, Office of Immigration Litigation, and I represent Respondent John Ashcroft in this case. In this case, the Court confronts a person who believes he's a citizen but never completed the application process. He believes he's a national, and he says he doesn't have to be a citizen to be a national. You're correct in that. He claims to be a national, thinking that he acquired that by virtue of a declaration of intent to seek citizenship and by virtue of taking some oaths of allegiance with the U.S. Army and with the U.S. Postal Service. He's also an alien who's convicted of a crime of violence, namely the exhibition of a deadly weapon with the intent to resist arrest. It so happens that he is not a national of the United States, as this Court has now held in Perdomo Padilla, and it also happens that his crime remains a crime of violence, and that limits this Court's jurisdiction. Now, let's turn to the nationality issue. Well, it limits our jurisdiction if he's not a national of the United States. His argument is that in determining our own jurisdiction, we must look at whether he is removable or not, and if he is a national of the United States, he's not. So it sort of folds into the jurisdictional question. Is there anything about the statutory sections on service in the Army or other armed services that would change the analysis in Perdomo Padilla or permit a distinction to be drawn between that case and this one? No, Your Honor, there is not. In fact, the only provisions that relate to the military with regard to citizenship and nationality actually cut the other way. They further support Perdomo Padilla. In particular, 8 U.S.C. 1439 and 1440 relax some of the requirements for the naturalization process for people who are in the military. Now, what that shows is that Congress believes not that people in the military automatically become nationals, but that they might be exempted from certain requirements on the path to naturalization. 1339, I believe, is the posthumous award of citizenship, and 1440 is if you're away, out of the country on service, et cetera. But both of those presume that the person is already not a national or has not already naturalized in some way and that the person intends to do that in the future and simply relaxes some of the requirements but not all of them. Therefore, all that reasoning does is graft onto the reasoning of Perdomo Padilla. Now, this Court has heard arguments about the 1408 is not exclusive, and the government would re-urge that Perdomo Padilla did explain that in looking at 1408, Title VIII of the U.S. Code, applying the doctrine of inclusio unis est exclusio alteris, that shows Congress can provide nationality without citizenship when it wants to, and the fact that nobody else was in that category means that there were no other categories other than those explained in 1408. So as a matter of statutory interpretation, 1408 becomes exclusive in a sense. Therefore, Mr. Ray's arguments can't carry the day in this particular circumstance. Now, going on to the next argument, which is whether or not he is convicted of a crime of violence. This Court has held in a variety of cases that a crime of violence requires something, requires in essence an intent to use force against the person or property of another, or is a crime that by its nature involves a substantial risk that that will happen. The key cases I'd like to point the Court to are United States v. Campos Fuerte. Now, for one, this is a case where a person was convicted for flight from a police officer in willful and wanton disregard for safety. Now, in that case, the Court said, well, here's somebody who has to do something more than mere negligence or have no intent. There has to be some modicum of intent to use some force or something that carries a substantial risk of force, and that's enough. Now, looking from that case to this one, we have a person who was convicted of exhibiting or drawing a deadly weapon, namely a knife, in an effort to resist arrest. Now, by every ordinary meaning of using or threatened use of force, that is a crime of violence. Now, of course, the guiding statute here is 18 U.S.C. 16, which has two provisions. The first part says where the statute carries as an element the use or threatened use of force. The second provision, the B subsection, is the provision that says, or the crime which has as an inherent part of it the substantial risk of use of force. Obviously, the California crime here of exhibiting this weapon to resist arrest has that person showing that knife to the officer in some way to really show that officer that he is not going to go easy, or that is a threatened use, and therefore would fall under the A provision. Now, even if that weren't enough to be a threatened use under 16A, it would certainly be an event which by its nature carries that substantial risk, an officer trying to execute the laws of California, approaching this person, this person showing a knife in an obvious statement that that person won't go easy. That's the substantial risk. Now, because of that, under either 16A or 16B, this is a crime of violence. As a result, this alien is removable under Section 237A2C, and what follows from that is that the court's jurisdiction is barred under 242A2C of the INA, found at 8 U.S.C. 1252A2C. Now, that, having put aside the question of nationality and having put aside the question of whether the person is removable, there's nothing more for the court to really decide. There are arguments raised in the brief that the board's decision to streamline its adjudication of Mr. Ray's case, that is to simply affirm the immigration judge's decision without further opinion, that argument no longer carries water because this court has since decided the case of Falcone-Carris, where it decided that, no, that is not a violation of due process. It's simply that the government's going to have to rely on the immigration judge's decision to carry whatever arguments it intends to bring to court. So there is no violation of due process in that instance. And with that, I see that I've hit the two-minute mark. If there are no further questions, I'll sum up. In this case, the court confronts a person who believes that he's a national, though not a citizen of the United States, by virtue of a declaration of intent to apply for citizenship and service in the U.S. Army. However, that does not change the reasoning of this court's decision in Perdomo Padilla. And, in fact, his military service, the exemptions provided to those in military service further demonstrate that Perdomo Padilla is applicable and governs this case. Moreover, now that we know he's not a national, we have an alien who is convicted of a crime of violence, exhibiting a knife in an effort with intent to resist arrest. That constitutes a crime of violence, which limits this court's jurisdiction under 242A2C. Therefore, the court should dismiss the petition for review. Thank you. Thank you. Ms. Genasi, you have some rebuttal time remaining. I just also wanted to point out a few other sections in the INA that would support my argument. The court in Perdomo Padilla, for example, relied on Section 1429, which provides that no naturalization application shall be considered by the Attorney General if removal proceedings are pending. But the court did not look at, for example, Section 1452B, which allows a person who claims to be a national but not a U.S. citizen to apply for a certificate of noncitizen national status from the Secretary of State. That section specifically allows persons claiming to be nationals born outside the United States or its outlying possessions to receive a certificate upon taking an oath of allegiance. Section 1503 also sets forth the procedures for declaration of U.S. nationality in the event of denial of rights and privileges as a national. That section specifically precludes using these procedures in case of nationality issues arising in removal proceedings, but for that situation, it's the petition for review that is the proper vehicle to decide the nationality issue. So there are many sections in the INA that deal with the nationality issue, and it does create an ambiguity, I think, that the court could interpret in favor of the Petitioner. Regarding the crime of violence issue, the section under which the Petitioner was convicted under, it specifically talks about exhibiting a firearm, you know, and the firearm could be loaded or unloaded. And exhibiting of a knife is closer to possession of a deadly weapon or firearm than assault with a deadly weapon. It's a near possession of a firearm is not a crime of violence, although it's possession while firing it is. And I believe that exhibiting is closer to possession than. Thank you. Thank you. Thank you, counsel. We appreciate the arguments of both parties. The case just argued is submitted.
judges: Hall, Graber, Weiner